# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MILTON WILLIAMS, ON BEHALF OF HIMSELF AND ALL OTHER PERSONS SIMILARLY SITUATED,<br><br>      Plaintiffs<br>  v.<br><br>HAWTHORNE FOOD COMPANY,<br><br>      Defendant. | CIVIL ACTION NO. 1:21-cv-2305 |

## CONSENT DECREE

This Consent Decree is entered into as of the Effective Date, defined below in Paragraph 2, by and between Milton Williams ("Plaintiff") and Hawthorne Food Company, a Delaware corporation ("Defendant") (each referred to herein as a "Party" and collectively as the "Parties"). This Consent shall remain in effect for the earlier of: (i) thirty-six (36) months from the Effective Date or (ii) the effective date of any regulations for websites adopted by the Department of Justice pursuant to Title III of the Americans with Disabilities Act.

**WHEREAS**, Plaintiff filed the lawsuit styled *Milton Williams, on Behalf of Himself and All Other Persons Similarly Situated v. Hawthorne Food Company*, Civ. A. No. 1:21-cv-2305, United States District Court, Southern District of New York (the "Lawsuit") against Defendant for alleged violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA"), the New York State Human Rights Law, N. Y. Exec. Law § 296(2) (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Administrative Code, § 8-107 (the "NYCHRL"), pursuant to which Plaintiff seeks injunctive relief, attorneys' and expert's fees, as well as expenses and costs;

**WHEREAS**, Defendant denies that Defendant's website, https://eprovisions.com/ (the "Website") contains barriers that prevent full and equal use by persons with vision impairments, denies that the Website is a place of public accommodation subject to the ADA or the NYSHRL and NYCHRL, and denies any and all liability and wrongdoing with respect to Plaintiff's purported claims in the Lawsuit;

**WHEREAS**, the Parties desire to avoid further expense, time, effort, and uncertainty with respect to litigating the Lawsuit;

**WHEREAS**, the Parties have therefore agreed to resolve the Lawsuit, and any claims that could have been asserted by Plaintiff, by entering into this Consent Decree and agreeing to the terms set forth herein;

**WHEREAS**, as of the Effective Date, no additional parties have been added to this lawsuit. Accordingly, this Consent Decree is entered into by Plaintiff, individually, and Defendant Hawthorne Food Company; and

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants and undertakings contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## RECITATIONS

1. The above-stated recitals are true and correct and are hereby incorporated into this Consent Decree.

## DEFINITIONS

2. **Effective Date** means the date on which this Consent Decree is entered on the Court's docket sheet following approval by the Court.

3. **Visual Impairment** means any physical, mental, or sensory impairment that substantially limits a person in the major life activity of seeing.

4. **Reasonable Efforts** means, with respect to a given goal or obligation, the efforts that a reasonable person or entity in Defendant's position would use to achieve that goal or obligation. Any disagreement by the Parties as to whether Defendant has used Reasonable Efforts as provided for in this Consent Decree shall be subject to the dispute resolution procedures set forth in Paragraphs 18 through 26 of this Consent Decree. Reasonable Efforts shall be interpreted so as to not require Defendant to undertake efforts, the cost, difficulty, or impact of which could: (i) constitute an undue burden, as defined, in Title III of the ADA, (ii) result in a fundamental alteration in the manner by which Defendant conducts its website operations or the primary functions related thereto, (iii) result in a loss of revenue or traffic on Defendant's website, or (iv) involve third-party software, applications, content, or plug-ins that are not owned by Defendant.

5. **Effective Communication** means that persons with Visual Impairments or blindness who use a screen reader and have average screen reader competency (the "Average Screen Reader User")[1] can perform the activities outlined in Paragraph 9. To be "ineffective communication," it is sufficient if an Average Screen Reader User experiences real hindrance, because of his or her disability, which affects his or her ability to perform the activities outlined in Paragraph 9.

---

[1] The phrase "Average Screen Reader User" is intended to refer to the general body of persons with Visual Impairments who use screen readers for Effective Communication with the Internet and various websites. The term is not intended to narrowly identify someone with a particular level of competence but instead is intended to be inclusive, while ruling out "outliers" in terms of screen reading software use proficiency. Therefore, the phrase "Average Screen Reader User" excludes a person who has recently started using a screen reader and has very little experience and competence using it and, at the other extreme, excludes a blind, tech-savvy person with substantial experience using a screen reader, while including most users in-between.

## COMPLIANCE WITH TITLE III OF THE ADA

6. **Accessibility Conformance Timeline:** Defendant shall use Reasonable Efforts to provide auxiliary aids and services that provide an Average Screen Reader User an equal opportunity to benefit from the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website in accordance with the following timeline and requirements, provided that the following dates will be extended in the instance that the Department of Justice releases regulations for websites under Title III of the ADA while this Consent Decree is in effect and which contain compliance dates and/or deadlines further in the future than the dates set forth herein:

    a. By September 30, 2021, Defendant shall implement certain provisions of the Web Content Accessibility Guidelines 2.0 Level A and AA Success Criteria ("WCAG 2.0 AA") in such a manner so that the Website will be accessible to an Average Screen Reader User, as set forth in Paragraph 9 below. Defendant shall not be required to ensure that the Website is fully compliant with WCAG 2.0 AA. Additionally, Defendant shall not be responsible for ensuring that third party software, applications, content, or plug-ins that are not owned by Defendant, but are otherwise linked to or from the Website, conform to WCAG 2.0 AA.

7. **Website Accessibility Coordinator:** By June 30, 2021, Defendant shall designate an employee or a third party as its accessibility coordinator who may consult with the Accessibility Consultant, as that term is defined in Paragraph 10, to the extent they are different people. Defendant may substitute a different employee or third party as the accessibility coordinator from time to time in its sole discretion.

8. **Website Accessibility:** By September 30, Defendant shall:

a. Directly link from the Website's homepage, a statement in a screen reader-accessible format that indicates that Defendant is making Reasonable Efforts to increase the accessibility of the Website so that persons with disabilities will have an equal opportunity to benefit from the goods, services, facilities, privileges, advantages, and accommodations of Defendant through the Website (the "Accessibility Statement"); and

b. Accompany the Accessibility Statement with an accessible means of communicating accessibility questions and problems to Defendant.

9. **Effective Communication Task List**. Subject to the limitations above, by September 30, 2021, the Website shall allow the Average Screen Reader User to perform the following activities through the Website, to the extent such functions are otherwise available, without experiencing real hindrance because of his or her Visual Impairment:

a. Review/browse the full range of products available for purchase;

b. Add a product to the digital shopping bag;

c. Retrieve and apply any discount codes that may be applicable to a purchase;

d. Provide the customer information necessary to complete a purchase;

e. Complete a purchase, including making shipping arrangements;

f. Review Defendant's policies, terms of use, and frequently asked questions;

g. Contact Defendant through its customer service portal;

h. Access the links necessary to connect with Defendant through its social media pages; and

i. Review the Accessibility Statement.

10. **Accessibility Consultant:** By June 30, 2021, Defendant shall retain an independent consultant or employ a person of its own choosing, who has expertise concerning accessible website development and knowledge of the terms of this Consent Decree and WCAG 2.0 AA (the

"Accessibility Consultant")[2] to implement Defendant's Reasonable Efforts with respect to accessibility of the Website as described in this Consent Decree.

11.  **Additional Time.**  If on or before September 30, 2021, the Website does not allow an Average Screen Reader User to perform the activities outlined in Paragraph 9 due to third parties or reasons beyond the control of Defendant, then Defendant shall be allowed additional time to complete any relevant modifications that would be needed and shall not be deemed to be in violation of the September 30, 2021 deadline, so long as Defendant provides written notice to Plaintiff's counsel of the delay, the reasons for the delay, and the anticipated date on which the modifications will be made, and makes a good-faith effort to implement the modifications as soon as reasonably possible thereafter.

## RELEASE OF CLAIMS

12.  **No Additional Payments.** Plaintiff and Plaintiff's Counsel acknowledge that they, and their respective consultants, experts, and any similar person or entity, are not entitled to any other amounts whatsoever in connection with the Lawsuit and/or settlement of the same, and that no other attorney or law firm has a claim to any fees or costs in connection with this matter.

13.  **Persons Bound and Intended Third-Party Beneficiaries.**  This Consent Decree shall be binding on Defendant and its respective subsidiaries, agents, employees, and officers.  In the event Defendant seeks to transfer or assign all or part of its interest in any service covered by this Consent Decree, and the successor or assign intends to carry on the same or similar use of the Website and acknowledges its obligations under this Consent Decree in writing, then the successor or assign shall be solely responsible for the obligations remaining under this Consent Decree.  The Parties to the Consent Decree expressly intend and agree that this Consent Decree shall inure to

---

[2]   The Accessibility Consultant may be the same person as the accessibility coordinator.

the benefit of all persons with a Visual Impairment who utilize a screen reader to access the Website. Such visually-impaired persons shall constitute intended third-party beneficiaries to this Consent Decree and shall be entitled to independently enforce the provisions of this Consent Decree against Defendant, subject to the dispute resolution provisions herein.

14. **Release.**  In exchange for the good and valuable consideration set forth herein, the sufficiency of which is hereby acknowledged, Plaintiff Milton Williams, his agents, employees, family members, partners, successors, assigns, and heirs, along with anyone claiming by or through them, jointly and severally (collectively, the "Releasing Parties") hereby release, acquit, satisfy, and discharge Defendant Hawthorne Food Company, along with any and all of their respective predecessors, successors, agents, employees, assigns, officers, directors, shareholders, members, affiliated entities, parents, subsidiaries, insurers, and any entity or person related to them, jointly and severally (hereinafter the "Released Parties") from any and all claims (including but not limited to claims under Title III of the ADA, the New York State Human Rights Law, the New York City Human Rights Law, and every other applicable federal, state or local statute, regulation, ordinance, or common law theory), demands, liabilities, debts, judgments, damages, expenses, actions, causes of action, or suits of any kind which the Releasing Parties may have, may have had, or may hereafter raise against the Released Parties, whether known or unknown, with respect to the time period from the beginning of the world through the date of this Consent Decree, including all claims by the Releasing Parties for attorneys' fees and costs, expert's fees, expenses, or any other amount, fee, and/or cost, with the exception of the attorneys' fees and costs required to be paid by Defendant pursuant to the Parties' separate agreement. Plaintiff agrees that he will not file any action, suit, claim, or proceeding of any kind relating to the released claims, except as permitted herein. In the event Plaintiff is included within any class or collective action

7

asserting any released claim against any of the Released Parties, Plaintiff agrees that he will opt out or withdraw from such action at the earliest opportunity and, in the event he is not able or permitted to do so, he unconditionally and irrevocably assigns any recovery, award, or damages awarded to him as a result of such action to Defendant.

15. **Notice of Alleged Violations.**  To the extent any potential claims are not released pursuant to Paragraph 15, the Releasing Parties agree that if, in the future, they allegedly encounter any purported barriers that limit the accessibility of *https://esprovisions.com/* (the "Website"), the Releasing Parties, through their counsel, shall provide Defendant's counsel with written notice pursuant to Paragraph 29 herein, setting forth the specific alleged barriers encountered on the website(s) (the "Future Notice").  Defendant shall have no less than ninety (90) days from the date Defendant's counsel receives the Future Notice (the "Cure Period") to cure (or commence efforts to cure) any alleged barriers set forth in the Future Notice, provided the Parties have reached an agreement on whether in fact such barrier(s) exist.  No cash settlements will be demanded, expected, or made, provided that the alleged barriers are remedied within the Cure Period or commenced during such period and completed as soon as reasonably possible.  During the Cure Period, the Releasing Parties shall not file any legal action against any of the Released Parties. Notwithstanding the requirements of any other federal, state, or local disability-rights laws or codes, any future claims brought by the Releasing Parties against the Released Parties shall be limited to the relief available under Title III of the ADA, including any amendments thereto.

**PROCEDURES IN THE EVENT OF DISPUTES**

16. The procedures set forth in Paragraphs 18 through 25 must be exhausted in the event that (i) Plaintiff believes that Defendant has failed to meet its obligations pursuant to this Consent Decree or (ii) Defendant believes that there is an obligation set forth herein with which it

cannot substantially or reasonably comply. There will be no breach of this Consent Decree by Defendant in connection with such allegations until the following procedures in Paragraphs 18 through 26 have been exhausted.

17. Plaintiff will notify Defendant in writing after the dates for compliance set forth herein if Plaintiff believes that the Website is not in substantial compliance with this Consent Decree. Defendant will notify Plaintiff in writing if Defendant believes there are criteria of this Consent Decree with which Defendant cannot substantially comply hereunder and/or which will result in a material lack of usability of the Website. All notifications must include reasonable detail and shall be made in the manner set forth in Paragraph 29.

18. Within thirty (30) days of either Party receiving notice as described in Paragraph 17, the other Party will respond in writing to the notice. Within fifteen (15) days of receipt of the response, the Parties will meet by telephone, or in person, in an attempt to informally resolve the issue.

19. If the issue remains unresolved within thirty (30) days of the meeting referenced in Paragraph 18, the Parties will each have an additional thirty (30) days to select an expert and the two experts will mutually select an independent accessibility consultant with substantial experience in accessible website design who will evaluate the particular item(s) raised based as to whether the Website permits an Average Screen Reader User to reasonably perform the activities described in Paragraph 9.

20. Plaintiff will not be able to prove a breach of this Consent Decree as it relates to the accessibility of the Website unless: (i) the independent accessibility consultant determines that an Average Screen Reader User experiences real hindrance, because of his or her Visual Impairment, which prevents him or her from performing the particular item(s) listed in Paragraph

9 using a prominent commercially-available screen reader such as Jaws, Voiceover, or NVDA in combination with one of the following browsers (in versions that are currently supported by their publishers): Internet Explorer, Firefox, Safari, or Chrome, subject to the limitations contained herein; and (ii) Defendant fails to remedy the issue using Reasonable Efforts within a reasonable period of time of not less than sixty (60) days of receiving the accessibility consultant's opinion. If the accessibility consultant believes that a reasonable time using Reasonable Efforts to remedy the items found not to be usable is longer than sixty (60) days, then the Parties agree that the longer time period recommended by the accessibility consultant shall apply so long as the extension is documented in writing and executed by the Parties to this Consent Decree or their respective counsel. If the independent accessibility consultant finds that a particular item found not to be usable cannot be remedied using Reasonable Efforts, Defendant shall not be obligated to remedy that item and it shall not be deemed to be in breach of this Consent Decree.

21. Should the Parties thereafter have a dispute regarding an issue raised in a notice given under Paragraph 17 after the procedures in Paragraphs 18 through 20 have been exhausted, the dispute shall be handled pursuant to the procedures set forth in Paragraphs 22 through 26 below.

22. If a Party believes that the other Party hereto has not complied in all material respects with any provision of the Consent Decree, that Party claiming non-compliance shall provide the other Party with notice of non-compliance containing the following information: (i) the alleged act of non-compliance; (ii) a reference to the specific provision(s) of the Consent Decree that is not being complied with in all material respects; (iii) a statement of the remedial action sought by the initiating party; and (iv) a reasonably detailed statement of the specific facts, circumstances, and where applicable, legal argument supporting the position of the initiating party.

23. Within forty-five (45) days of receipt of a notice pursuant to Paragraph 22, the non-initiating Party shall respond to the initiating Party in writing.

24. Within fourteen (14) days after the response described in Paragraph 23, the Parties shall informally meet and confer and attempt to resolve the issues raised in the notice.

25. If the matters raised in a notice provided pursuant to the above are not resolved within forty-five (45) days of the initial meeting and conference required by Paragraph 23, either Party may submit the unresolved matters to nonbinding mediation before a mutually agreed upon mediator.

26. If the dispute is not resolved in mediation or otherwise, either Party may move this Court to enforce the terms of this Consent Decree.

27. Any of the time periods set forth in Paragraphs 18 through 25 may be extended by mutual agreement of the Parties.

28. Notwithstanding the terms of the release, should Plaintiff encounter any issue related to the accessibility of the Released Parties' Website as set forth herein, they shall notify Defendant in the manner specified in Paragraph 29. Plaintiff shall not initiate enforcement of the Consent Decree until the dispute resolution procedure outlined in Paragraphs 18 through 26 is exhausted.

29. Any notice or communication required or permitted to be given to the Parties hereunder shall be given in writing by registered e-mail or by overnight express mail or United States first class mail, addressed as follows:

| To Plaintiff: | To Defendant: |
|---|---|
| Gottlieb & Associates | Greenberg Traurig, LLP |
| Attn: Jeffrey Gottlieb | Attn: Kelly Bunting |
| 150 East 18th Street, Suite PHR | 1717 Arch Street, Suite 400 |
| New York, NY 10003 | Philadelphia, PA 19103 |
| (Tel.) 212-228-9795 | (Tel.) 215-988-785 |
| Email: Jeffrey@gottlieb.legal | Email: buntingk@gtlaw.com |

## ENFORCEMENT AND OTHER PROVISIONS

30. **Non-Admission of Liability.** Neither this Consent Decree nor anything contained herein shall constitute or be construed as an admission by Defendant, the Released Parties, or by any officials, contractors, or agents of Defendant or the Released Parties of a violation of any federal, state, or local statute, nor as evidence of any other liability, wrongdoing, or unlawful conduct. The Parties acknowledge that this Consent Decree has been entered into by the Parties to avoid the costs and expenses of continued litigation and to settle disputed claims.

31. **No Litigation Hold.** The Parties agree that, as of the Effective Date of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described herein. To the extent that any of the Parties previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described herein, the Party is no longer required to maintain such a litigation hold. Nothing in this paragraph relieves any Party of any other obligations imposed by this Consent Decree.

32. **Ambiguities.** The Parties acknowledge that each Party has reviewed and participated in the drafting of this Consent Decree and that any rule of construction providing that ambiguities be resolved against the drafting Party shall not be employed in the interpretation of this Consent Decree.

33. **Governing Law**. The interpretation and enforcement of this Consent Decree shall be governed by the laws of the State of New York.

34. **Informed Execution.** The Parties have read and understood this Consent Decree, have had the opportunity to discuss the same with legal counsel, and have voluntarily agreed to sign the Consent Decree and to be bound thereby.

35. **Authorization.** Each person executing this Consent Decree on each Party's behalf has been duly authorized to sign on behalf of the respective Party and to bind each to the terms of the Consent Decree.

36. **Counterparts.** The Parties agree that this Consent Decree may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute but one and the same instrument. The Parties agree and acknowledge that a photocopy, facsimile copy or scanned copy of an executed signature may be used in place of an original executed signature for any purpose.

37. **Entire Agreement.** This Consent Decree constitutes the entire agreement between the Parties hereto with respect to the matters set forth herein and supersedes in its entirety any and all agreements or communications, whether written or oral, previously made in connection with the matters herein. Any agreement to amend or modify the terms and conditions of this Consent Decree must be in writing and executed by the Parties hereto.

38. **Severability**. If any provision of this Consent Decree or any part of any provision of this Consent Decree is found to be invalid or unenforceable by a court of competent jurisdiction, such invalidity or unenforceability shall not affect the validity or enforceability of any other provision(s) or part(s) of this Consent Decree, provided that the Parties may still effectively realize the substantial benefit of the promises and considerations conferred by this Consent Decree. In

the event the release of claims is deemed unenforceable for any reason, Plaintiff agrees to promptly execute a release of the broadest possible scope that is binding and enforceable.

***[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]***

**AGREED AND CONSENTED TO BY:**

_Milton Williams_
<sub>Milton Williams (May 3, 2021 15:33 PDT)</sub>
_____        May 3, 2021
Milton Williams                                                            _____
                                                                                          Date


*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]*

AGREED AND CONSENTED TO BY:

Hawthorne Food Company

By: *[signature]*

Printed Name: William Deacon

Its: Authorized Signatory

So Ordered:

*[signature]*
Edgardo Ramos, U.S.D.J
Dated: 5/5/2021
New York, New York

5-4-20
Date

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]*